299 P.2d 629

Albert ZUGSMITH, Appellant,

v.

John C. MULLINS, John B. Mills and Bernice Mills, his wife, et al., Appellees.

No. 6017.

Supreme Court of Arizona.

July 10, 1956.

Opinion Modified on Rehearing
Oct. 30, 1956.
See 303 P.2d 261.

Jerry Giesler, Rexford Eagan, Beverly Hills, Cal., W. Francis Wilson and Kent A. Blake, Phoenix, for appellant.

Jennings, Strouss, Salmon & Trask, O. M. Trask, Phoenix, for appellees.

PHELPS, Justice.

This is an appeal from (1) a judgment n. o. v. against plaintiff and in favor of defendant John C. Mullins, and (2) from a judgment in favor of John B. Mills and Bernice Mills, his wife, upon an instructed verdict by the court, and (3) from an order denying plaintiff's motion for a new trial as to these defendants. Defendant Mullins cross-appealed from an order denying defendant's motion for a summary judgment and motion for a directed verdict upon the ground that the contract for a commission was an illegal contract because the pleadings and evidence showed the plaintiff was not a licensed broker or dealer in securities under the Securities Act of the state of Arizona.

Plaintiff's cause of action is based upon an alleged oral agreement made in the early part of 1951 between John C. Mullins, defendant, and Albert Zugsmith, plaintiff herein, in which it is claimed Mullins engaged Zugsmith to procure a purchaser ready, able and willing to buy KPHO-TV and KPHO Radio Stations in Phoenix at a price acceptable to the owners. It was further claimed that Mullins, in entering into said oral agreement with Zugsmith, acted as agent for defendants Harber, Mills, Caldwell and Phoenix Broadcasting, Inc. The property was sold through Ed Meredith to the Meredith Engineering Company and the Meredith-Syracuse Television Company and a contract was executed by the parties for the purchase and sale thereof on April 29, 1952. The transfer of the property interest of defendants was made by the sale of all the stock of KPHO-TV and KPHO Radio Corporations to the purchasers. The purchase price was $1,500,000. Plaintiff claims he was the procuring cause of the sale and brought this action to recover commission therefor in accordance with his oral agreement with Mullins. The cause was tried to a jury.

At the close of plaintiff's case, upon motion of defendants, the court instructed a verdict against plaintiff and in favor of Doctor J. N. Harber and wife, Erskine Caldwell and wife, and Phoenix Broadcasting, Inc., and denied the motion as to John C. Mullins and John B. Mills and Bernice Mills, his wife.

The court again at the close of the entire case, in the course of submitting the case to the jury, instructed it to return a verdict

against plaintiff and in favor of defendants Doctor J. N. Harber, Mary Harber, Erskine Caldwell, June D. Caldwell, Phoenix Broadcasting, Inc., and John B. Mills and Bernice Mills, submitting the case to the jury only as to John C. Mullins.

The jury returned a verdict in favor of plaintiff and against Mullins in the sum of $75,000. Thereafter, upon motion of defendant Mullins, the court ordered judgment n. o. v. against plaintiff and in favor of Mullins. Defendant also filed a motion for a new trial. The court did not rule upon the motion for a new trial. However, after the expiration of 20 days from the rendition of judgment, under the provisions of Rule 59(e), Rules of Civil Procedure, 1956, section 21–1308, A.C.A.1939, said motion for a new trial is deemed denied by operation of law.

In his first assignment of error Zugsmith, appellant herein, claims the court erred in granting judgment n. o. v. for defendant Mullins based upon the ground that the plaintiff did not have a broker's or dealer's license under the Arizona Securities Act and therefore could not legally represent defendants as agent or dealer in the sale of stock of the two corporations operating under the name of KPHO-TV and KPHO Radio Stations and consequently could not collect a commission for such sale. On the other hand it is urged by appellant that this type of transaction is specifically exempted from the operation of the Securities Act.

Defendant, taking the opposite view, raised the same question of law on a cross-assignment of error. The two assignments of error will be treated together.

■ The fact is this type of transaction, so far as plaintiff is concerned, does not fall within the operation of the act at all. We are of the view that the court committed reversible error in granting judgment to defendant Mullins n. o. v. upon the ground stated by it, first, because it is not alleged in the complaint, nor was it contended during the trial, that plaintiff sold the stock involved in this litigation. Under the contract alleged plaintiff did not agree to sell any stock for defendants. He agreed to procure a prospective purchaser for KPHO-TV and KPHO Radio Stations who was ready, able and willing to buy them on the owners' terms. He bases his claims upon the ground only that he was the efficient, proximate and procuring cause of the sale of said stock and this was the theory upon which the case was tried and upon which the jury was instructed on the law of the case. Under all the evidence the owners made the sale to the purchasers of said stock and they chose the modus operandi of the transfer of their interest in KPHO-TV and KPHO Radio Stations to the purchasers. They chose to assign their stock in the two corporations to the purchasers rather than to convey the physical property of the two stations by deed, bill of sale, etc. The owners

had a legal right to sell their stock in said corporations under the provisions of section 53–1405(c), 1952, A.C.A.1939 [A.R.S. § 44–1844]. Therefore there was nothing whatever illegal about the transaction.

The only question then to be determined insofar as defendant Mullins is concerned is: Was there any substantial evidence from which a reasonable inference could be drawn to support the verdict of the jury? In other words, was there any substantial evidence supporting plaintiff's claim that he was the efficient, proximate and procuring cause of the sale of these properties (stock in these corporations) to the purchaser? If there was, the court erred in granting judgment for defendant n. o. v.

In arriving at a determination of this question we must consider the evidence most strongly in favor of sustaining the verdict of the jury. Glowacki v. A. J. Bayless Markets, 76 Ariz. 295, 263 P.2d 799.

Plaintiff testified that he came to Phoenix upon the telephonic request of Mullins to discuss the sale of KPHO-TV and KPHO Radio Stations; that a Mr. Gross of San Diego for whom he had been instrumental in selling a television station, had given Mr. Mullins his name as being the person responsible for the sale of the San Diego station. Mullins was not sure whether he called plaintiff or plaintiff called him. He was of the belief that plaintiff called him, however.

Plaintiff further testified that Mullins sent an employee to the airport to convey him to his office; that very soon after his arrival at defendant's office, Mullins launched into a discussion of the sale of these stations, the probable price for which they might sell in the market, the methods to be employed in procuring the best price available therefor and requested plaintiff to produce a purchaser ready, able and willing to buy at a price satisfactory to the owners and stated that they would pay him five per cent of the purchase price as commission therefor. Mullins later confirmed this by letter. Plaintiff suggested to Mullins that the best plan to be employed in obtaining the highest market price was to create competitive bidding among prospective purchasers. Mullins wanted to sell at a profit of roughly $1,000,000.

With Mullins' permission, plaintiff called two or three prospective purchasers from defendant's office including Meredith whom Mullins had never met. Subsequently a number of letters passed between plaintiff and Mullins and between plaintiff and Meredith which were introduced in evidence. Evidence was also introduced of telephone conversations between plaintiff and Mullins and between plaintiff and Meredith. Mullins and Meredith admitted communicating with plaintiff both by letter and telephone relative to the sale of these stations; but each of them denied that plaintiff was in any wise responsible for the sale of the

property by Mullins to Meredith. It is not denied that Zugsmith, by letter, called the attention of Meredith to the possibility of buying KPHO-TV and KPHO Radio Stations at Phoenix and Meredith forwarded this letter to Mr. Payson Hall, who was a director and treasurer of the Meredith-Syracuse Television Company. Meredith wrote the plaintiff to "shoot" him any further information that he thought would be of interest concerning these properties that he would like them to consider.

Plaintiff communicated with Meredith at frequent intervals by letter and telephone seeking to bring about a meeting between him and Mullins in Phoenix for the purpose of inspecting and discussing the sale of the two stations to him. As late as April and May, 1951, plaintiff wrote letters to Meredith in Des Moines advising him that Mullins would see him the last week in May in Phoenix at which time he would show Meredith the operation. Meredith did not reply to these letters. He had, however, written plaintiff previously (March 13, 1951) that he expected to be in Phoenix the last week in May and if nothing further developed until that time he might take a look at the stations. After having been at Phoenix in May he wrote plaintiff stating that he did not get down to see the stations nor call on Mullins or talk to anyone in Phoenix about the TV Station because he was running around so much, and that he wanted to talk to Mr. Roy Wayland about it but he was out of town.

Plaintiff telephoned Meredith in New York on June 7 and Meredith advised him to send to Payson Hall at Des Moines, (Treasurer of the Meredith Publishing Company and director of its TV and radio stations, also vice president of Meredith Engineering Company and treasurer of Meredith-Syracuse Television Company and director of each of said companies), a financial statement of the Phoenix stations and on June 8 plaintiff forwarded said reports to Hall. Meredith also told plaintiff in the telephone conversation that he and Hall would be in Phoenix to see Mullins as soon after June 15 as possible. On June 11 plaintiff wrote Mullins to that effect. Plaintiff again wrote Meredith on June 22 asking him to advise him when he could be in Phoenix. These letters were not answered. He wrote him again July 17 seeking the same information and again August 8. No response. Meredith did come to Phoenix on July 15 and testified that through curiosity he went to KPHO-TV and met Mr. Mullins. He did not notify plaintiff of the fact. He didn't even mention Zugsmith's name. Neither did Mullins during the course of the conversation and Meredith did not remember Mullins' name, although he had been bombarded with letters over a period of months seeking to bring about a meeting of the two men in Phoenix and an

inspection of the Phoenix property by Meredith.

Mullins and Meredith seemed to have had an affinity for each other, judging from Mullins' testimony that Meredith visited him as many as twenty times between July 15 and the date of the sale of the property. But at no time, on these occasions, according to Meredith, did either he or Mullins mention the sale or purchase of the television and radio stations. In March, 1952, Mullins was a guest in the home of Meredith in Des Moines, Iowa, and from there they went to Chicago in Meredith's plane to a television and radio convention, and on this trip Meredith first mentioned to Mullins the subject of purchasing the stations and according to his testimony, Mullins said the stations were not for sale.

The facts are, however, that the sale to the Meredith Corporations was consummated and the contract signed on the following April 29, 1952, approximately one month after Meredith first mentioned buying to Mullins, at the price at which plaintiff had quoted to Meredith as being the sale price of the property. There are many other circumstances which might be related here indicating that plaintiff had brought Mullins and Meredith together; that he had aroused the interest of Meredith in the purchase of these properties, and we believe there was substantial evidence to support the jury in finding that plaintiff was the efficient,

proximate and procuring cause of the sale thereof to Meredith.

Mullins had told Zugsmith, according to the latter's testimony: "Your big job now is to get that other bidder in. I will take care of Meredith." In February, 1952, Zugsmith had two financially qualified purchasers in Phoenix, one of whom plaintiff endeavored to prove had offered $1,500,000 for KPHO-TV and KPHO Radio Stations. The latter offer was made in February, 1952. The court erroneously rejected this testimony. It was clearly admissible under the evidence for the purpose of showing, if true, either of two things: one, that Zugsmith was carrying out his part of the agreement with Mullins to get other bidders for the property in order to put pressure on Meredith; or, two, that he produced two bona fide purchasers ready, able and willing to buy the property at the price fixed by the owners. Under such circumstances it cannot be said that the jury was not justified in finding that Zugsmith was the procuring cause of the sale to Meredith; that Zugsmith did not abandon his efforts to produce Meredith as a purchaser upon the owners' terms and that there was no break in the continuity of events leading up to the sale to Meredith. Clark v. Ellsworth, 66 Ariz. 119, at page 122, 184 P.2d 821.

Counsel for defendant undertakes to urge that inasmuch as plaintiff never talked to Meredith or Hall *as directors of the corporations purchasing the stock* of KPHO-

TV and KPHO Radio Corporations about the purchase thereof that it necessarily follows that the companies these gentlemen represented and who ultimately bought the stations at the price quoted by plaintiff, were not procured by appellant.

We gather from this argument and from the evidence bearing directly upon this point wherein counsel asked Meredith and Hall if Zugsmith ever discussed the sale of these properties (or this stock) with them, "as directors of these corporations", that counsel claims that in order to bind the corporations involved in this litigation, plaintiff would have had to say, "Mr. Meredith or Mr. Hall, I am now talking to you in your capacity as directors of these corporations." If this is the idea intended to be conveyed, it is of course not at all persuasive. Corporations act only through directors who are individuals. These individuals were officers or directors of the purchasing corporations. Whatever information they received from appellant relative to these stations was knowledge of the corporations, whether appellant directed his statements to them as individuals or as members of the board of directors of said purchasing corporations.

The Meredith Engineering Corporation owns the property used by the Meredith Publishing Company in its operation of the publishing business and leases it to the publishing company. It also owns farms and various other interests including the stock of Meredith-Syracuse Television Corporation. Meredith is president of the Meredith Engineering Company as well as director. It appears to be the holding company for the other Meredith Corporations. In any event they are all controlled by an interlocking directorate. Mr. Meredith, while on the witness stand, testifying about them, stated:

"I get so mixed up on some of these corporation arrangements but it (The American Champlain Television) is a subsidiary of the Meredith Engineering directly."

Plaintiff's next assignment of error is to the effect that the court erred in instructing a verdict for John B. Mills and wife for the reason that the evidence sufficiently established the relation of principal and agent between Mills and Mullins. The court very properly excluded the testimony of Zugsmith relating to Mullins' statement or extrajudicial declaration tending to establish the relation of principal and agent as between Mills and Mullins.

The only other testimony bearing upon this alleged relationship is the testimony of Zugsmith concerning statements he claims to have been made by Mills to a Mr. Storer at the Kiva Club on February 25, 1952, when Mills came by the table where Zugsmith, Mullins and Mr. and Mrs. Storer were having lunch. Zugsmith testified that at that time

"Mr. Mills spoke very glowingly of Phoenix as a market and particularly a market in which to own a television station. He emphasized the potential capital gains in the event someone decided to buy, that undoubtedly he could buy and resell and move into a larger market. Mr. Mills by both action and word (Objection). * * * Placing his hand on Mr. Mullins' shoulder, Mr. Mills says 'John will act for me.'"

This occurred the next day after Mills came by their table at the Kiva Club, during the time the Storers were there.

It will be observed that the greater portion of the above statement is a mere conclusion of the witness and cannot be construed in any sense of the word as an ultimate fact. The only thing plaintiff related concerning that conversation that can be considered in determining whether the relation of principal and agent existed between Mills and Mullins is the statement, "John will act for me." On the first day that Mills came by the table where Storer, Zugsmith and Mullins were having lunch nothing was said during the course of the conversation about the television business in Phoenix, the witness stating that the conversation was about markets. He doesn't reveal what markets were discussed and it, of course, furnishes no basis whatever for establishing agency.

At another time in February, 1952, plaintiff, Mullins, Sherrill Corwin—a prospective purchaser of the KPHO Television and Radio Stations, and a Mr. Burke were having lunch at the Kiva Club. Mills came over to their table and again spoke very glowingly of Phoenix as a market and told of the operations and the success of the television station. During the course of the conversation he had his hand on Zugsmith's shoulder and said "Go to it, boys." He talked with all present at the table. Mullins explained the financial background of Corwin and Burke and recommended Mr. Corwin as having the financial qualifications to buy the stations. The price of $1,500,000 was mentioned in that conversation.

Does the above testimony, considered most strongly in favor of appellant's claim, as we must do under the law, constitute substantial evidence from which a reasonable inference could be drawn of the existence of the relation of principal and agent between Mills and Mullins insofar as the instant cause of action is concerned? We think not.

Viewed in the most favorable light such statements are most nebulous in creating a predicate upon which agency could rest. There is nothing in the evidence to the effect that Mills ever authorized Mullins to pay to plaintiff a commission of five per cent or any commission whatever to anyone to sell or to procure a purchaser ready, able and willing to buy KPHO-TV and KPHO Radio Stations at a price satisfactory to

the owners or that he knew that such promise had been made by Mullins to Zugsmith or to anyone else. It is our view, therefore, that the court correctly instructed a verdict in favor of Mills and wife.

■ Defendant next argues that in the event this court reverses the judgment n. o. v. in favor of defendant that it should remand it to the trial court for the purpose of having it pass upon the motion for a new trial, and cites Barron & Holtzoff, Federal Practice and Procedure, Vol. 2, section 1081, p. 780. At page 788 we find the following statement:

"2. It may deny both motions, in which case the verdict stands and the appeal is from the judgment entered on the verdict, assigning as errors both the refusal of judgment n. o. v. and errors of law in the trial as heretofore. The appellate court may reverse the judgment and remand the case for a new trial or direct the entry of judgment n. o. v.

"3. The trial court may grant both motions in which event the judgment n. o. v. is appealable and on reversal the case must be remanded for a new trial pursuant to the trial judge's order on the alternative motion. In such a case the trial court's order should specify that the new trial is granted only in the event of reversal of the judgment n. o. v., since the unconditional grant of a new trial will vacate the judgment n. o. v.

"4. The trial court may grant the motion for judgment n. o. v. and deny the motion for a new trial, stating its reasons. On appeal the appellate court may reverse the judgment n. o. v. and the verdict will still stand unless the appellee brings up for review errors of law in the trial sufficient to overthrow the judgment on the verdict."

We presume it is the claim of defendant that the court's statement at the time of ruling upon the motion for judgment n. o. v. falls within the provisions of subsection 3 above. We think it falls far short of falling within that class. Had it granted a new trial, in the event of reversal of the judgment n. o. v. we believe there would be merit to counsel's argument but we are of the view that it more nearly falls within the provisions of subsection 4, supra, wherein it provides that the trial court may grant the motion for judgment n. o. v. and deny the motion for a new trial stating its reasons. While the trial court did not deny the motion for a new trial, it was denied as above stated, by operation of law. We cannot give any legal effect to the court's statement that " * * * but for such order (for judgment n. o. v.) the Court would grant defendant's motion for a new trial. * * * " The fact is that he did not do so and this court cannot now

give vitality to a motion that has long been deceased by operation of law.

The judgment is reversed for the reasons hereinabove stated and the cause is remanded with directions to enter judgment for the plaintiff and against defendant Mullins in accordance with the verdict of the jury.

LA PRADE, C. J., and UDALL, WINDES and STRUCKMEYER, JJ., concur.