327 P.2d 1001

**Frederic J. TRUMP and Juliann S. Trump, husband and wife, Appellants,**

**v.**

**H. S. BADET, Jr., Appellee.**

No. 6393.

Supreme Court of Arizona.

July 15, 1958.

Darnell, Holesapple, McFall & Spaid, Tucson, for appellants.

Nolen L. McLean, Tucson, for appellee.

GORDON FARLEY, Superior Court Judge.

H. S. Badet, Jr., plaintiff-appellee, sought to recover monies which he paid for the purchase of stock in two corporations upon the ground that the sales of such stock to him were in violation of the Arizona Securities Act. Frederic J. Trump et ux., defendants-appellants, contend that the plaintiff purchased a fifty per cent interest in a business, rather than shares of stock as such, and that consequently the Securities Act has no application. The lower court determined that the Securities Act had been violated and entered judgment in favor of plaintiff, and this appeal followed.

The parties originally came in contact with each other through Attorney Frank E. Murphy, Jr., who was engaged by the defendants who, according to the terms of the employment contract:

> "* * * being in need of additional capital for said corporation and also in need of additional executive assistance and desires to retain an attorney to locate same and to handle the transactions involved in obtaining new stock subscriptions, handling the various agreements and stock transfers attendant thereto, * * *."

As a result of the attorney's efforts the plaintiff became interested, and to consummate the transaction the parties entered into a subscription agreement on April 20, 1953, which was subsequently modified orally, whereby the plaintiff agreed to acquire fifty per cent of the stock in two corporations known as Life Laboratories and Life Sales, both of which were originally incorporated by the defendants.

By the terms of the subscription agreement as orally modified, plaintiff acquired from defendants:

150 shares of stock in Life Laboratories for $15,000

15 shares of stock in Life Laboratories from one Fred Patterson for $1,500, and

60 shares of stock from Life Laboratories, a corporation, for $6,000, and

75 shares of stock from Life Sales, a corporation, for $7,500.

Neither of the corporations nor Patterson were made parties, but nevertheless the trial court rescinded the sale of all the foregoing stock, and directed the entry of a money judgment against the defendants for all of the stock purchased by plaintiff.

By defendants' first proposition it is urged that the parties were negotiating for the sale of fifty per cent interest in the business of the corporations, and merely chose the modus operandi of a stock transfer to effectuate the sale of the one-half interest in the business. It is admitted that plaintiff wanted to acquire at least a one-half interest in the business, but nevertheless plaintiff urges that the agreement which the parties concluded was a stock subscription agreement. Testimony was offered to

show that Murphy was employed to sell an interest in the business and to interest a purchaser who would assume some of the managerial duties, but the lower court apparently gave little weight to such testimony in the light of the language contained in Murphy's employment agreement *to procure additional capital and in obtaining new stock subscriptions,* as well as the agreement of April 20, supra, whereby plaintiff subscribed for shares of stock and wherein repeated reference is made to the subscription of stock by plaintiff, without mention of a businesss interest as such as distinguished from shares of stock therein. The language of both agreements with respect to the subject matter is clear and unambiguous, and the trial court was justified in disregarding the oral testimony as to an interest in the business being the subject matter of the sale to the plaintiff.

The case of Zugsmith v. Mullins, 81 Ariz. 33, 299 P.2d 629, is cited by defendants as authority for defendants' position, but the distinction between the facts in that case and the instant case is clearly apparent. Therein it was stated:

"Under the contract alleged plaintiff did not agree to sell *any stock* for defendants * * *." [Emphasis supplied.]

Here the evidence clearly supports the trial court's finding that Murphy undertook to find a purchaser for *stock* in the corporation, and plaintiff *subscribed* for *stock.*

Defendants' second proposition is that plaintiff participated as an officer of Life Laboratories and Life Sales in the issuance of the stock which he acquired from the corporations, and as a consequence he is in pari-delicto and cannot recover from defendants for his own wrong in offering such stock for sale. The answer to that contention is simply that the transaction was outlined in the original subscription agreement, and that the bona fide acts of the purchaser of stock in compliance with the terms of the original agreement do not impute illegality to such purchaser in effectuating the terms of such an agreement.

In their third proposition defendants urge that

"3. A purchaser of stock has no cause of action under the Arizona Securities Act for a rescission of the sale and recovery of the money paid for stock from one who received none of the consideration and was not a party to the sale."

Generally speaking that is a correct statement of law but not applicable to the facts in this case. The plaintiff was induced by defendants in the original subscription agreement to acquire the stock of Life Laboratories and Life Sales from those respective corporations although the actual

sale to plaintiff occurred on May 22, the date he became an officer of the companies. Defendant Trump asserts that he was not a party to the actual transfer of stock and that he cannot be held liable in an action to rescind the sale.

▉ Ordinarily that position would be tenable were it not for the language of A.R.S. § 44–2003 which provides:

"An action brought under §§ 44–2001 or 44–2002 may be brought *against any person,* including any dealer, salesman or agent, who made, *participated in or induced the unlawful sale or purchase,* and such persons shall be jointly and severally liable to the purchaser or seller entitled to maintain such action." [Emphasis supplied.]
That section clearly fixes the liability of one who induces the unlawful sale or purchase, and since the transfer of stock by the corporations was tied in with the original subscription agreement, defendants' argument on that point must likewise fail.

▉ The effect of defendant Trump's fourth proposition of law is that the sale by defendant Trump of 150 shares of his personally owned stock to plaintiff for $15,000 was an exempt transaction under A.R.S. § 44–1844(3) which provides among other things that an exempt transaction is:

"3. The sale in good faith and not for the purpose of avoiding the provisions of this chapter of securities by the bona fide owner thereof, other than an issuer or underwriter, in an isolated transaction, in which the securities are sold either directly or through a dealer as agent for the owner but where the sales are not made in the course of repeated or successive transactions of similar character by the owner and are not made directly or indirectly for the benefit of the issuer or an underwriter of the securities."

Since the lower court made findings of fact 10 and 11 which amount to a finding of fraudulent practices denounced by § 44–1991 which states,

"§ 44–1991. *Fraud in purchase or sale of securities.* It is a fraudulent practice and unlawful for a person, in connection with a transaction or transactions within or from this state involving an offer to sell or buy securities, or a sale or purchase of securities, including securities exempted under § 44–1843 and including transactions exempted under § 44–1844, directly or indirectly to do any of the following:

"1. Employ any device, scheme or artifice to defraud.

"2. Make any untrue statement of material fact, or omit to state any material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading

"3. Engage in any transaction, practice or course of business which

324

operates or would operate as a fraud or deceit."
and since it appears there was evidence to sustain such findings, even though that evidence falls short of the necessary ingredients of common law fraud, the defendants could not avail themselves of the claim of an exempt transaction.

In his fifth proposition of law, defendant Trump seeks to avoid liability for the stock acquired by plaintiff from Life Sales on the ground that the stock was not required to be registered at the time it was issued by both plaintiff and defendants at the organization meeting of that company; and consequently they stand in the same position as incorporators under § 44-1844(9). The difficulty with that position is the finding of fraudulent practices as denounced by § 44-1991, supra, as well as the specific language of § 44-1844(9) which grants the exemption only on the issuance of stock or securities to the "original incorporators."

■ A similar question was before this Court in the case of Durham v. Firestone Tire & Rubber Co., 47 Ariz. 280, 55 P.2d 648, when the statute then in effect, Rev. Code 1928, § 1887, provided the exemption to "those who associated themselves together to form such company." Such language was construed as not limited to the actual incorporators named in the articles of incorporation but included all who participated in the organization. The change in terminology in the statute in the light of that case is significant, and excludes anyone who was not an actual incorporator. The rule that it is presumed that the legislature intended to adopt the interpretation placed on a statute when it is re-enacted in substance does not apply when the re-enactment does not admit of any ambiguity, as did the original statute.

■ "Original incorporators" is not synonymous with "those who associated * * *," but is a clear and unambiguous statement limited to the actual incorporators. Here it is admitted plaintiff was not an incorporator. The rule to be applied under such circumstances is that there is a duty on the courts to give effect to statutory amendments, since it is presumed that the legislature by amending a statute intends to make a change in existing law. Beach v. Superior Court, 64 Ariz. 375, 173 P.2d 79; Finch v. State Department of Public Welfare, 80 Ariz. 226, 295 P.2d 846.

Judgment affirmed.

UDALL, C. J., and WINDES, PHELPS, and STRUCKMEYER, JJ., concurring.

NOTE: JOHNSON, J., having disqualified, the Honorable GORDON FARLEY, Judge of the Superior Court, Santa Cruz County, was called to sit in his stead.