NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

———————————————

ROBERT AND DANIELLE KNOX, *Plaintiffs/Appellees*,

*v.*

RAVENCREST BUILDERS LLC, *Defendant.*

———————————————

ARIZONA REGISTRAR OF CONTRACTORS, *Intervenor/Appellant.*

No. 1 CA-CV 18-0438
FILED 5-14-2019

———————————————

Appeal from the Superior Court in Yavapai County
No. P1300CV201600944
The Honorable David L. Mackey, Judge

**REVERSED; REMANDED**

———————————————

COUNSEL

Koeller, Nebeker, Carlson, Haluck, LLP, Phoenix
By Kirk H. Hays
*Counsel for Plaintiffs/Appellees*

Arizona Attorney General's Office, Phoenix
By John R. Tellier, Michael Raine
*Counsel for Intervenor/Appellant*

---

## MEMORANDUM DECISION

Presiding Judge Diane M. Johnsen delivered the decision of the Court, in which Judge Michael J. Brown and Judge Jennifer M. Perkins joined.

---

J O H N S E N, Judge:

¶1            The Arizona Registrar of Contractors (the "ROC") appeals the superior court's entry of judgment in favor of Robert and Danielle Knox awarding them $30,000 from the Residential Contractors Recovery Fund (the "Fund").  *See* Ariz. Rev. Stat. ("A.R.S.") §§ 32-1131 (2019) to -1140 (2019).[1]  For the reasons stated below, we reverse and remand.

### FACTS AND PROCEDURAL BACKGROUND

¶2            On January 28, 2016, the Knoxes contracted with Ravencrest Builders, LLC, for the construction of a new home in Yavapai County.  The Knoxes intended to live full time in the home upon its completion.  They first paid Ravencrest a $5,000 retainer, then made a $50,000 down payment.

¶3            On February 1, 2016, the Knoxes' financing fell through.  They immediately contacted Ravencrest, told the contractor their lender had denied their loan and instructed Ravencrest not to perform any work under the contract.    Acknowledging their initial $5,000 deposit was nonrefundable, the Knoxes then demanded the company return their $50,000 down payment.    Ravencrest returned $10,000 but kept the remaining $40,000.

¶4            The Knoxes then sued Ravencrest to recover the remaining $40,000 and notified the ROC of their claim against the contractor.  The ROC intervened and moved for a determination that the Knoxes did not satisfy the statutory requirements for recovery from the Fund.  *See* A.R.S. § 32-1136(A) (2019) (establishing the ROC's right to intervene in an action that may result in collection from the Fund); A.R.S. § 32-1131(3) (defining a

---

[1]      As we issue this decision, a package of "omnibus" amendments to the ROC statutes just has been signed into law.  S.B. 1397, 2019 Ariz. Sess. Laws, ch. 145, §§ 15-16 (1st Reg. Sess.)  This decision cites the versions of applicable statutes that were in effect at the time of the events at issue on appeal.

"person injured"); A.R.S. § 32-1132(A) (2019) (requiring "actual damages" for recovery).

¶5          Meanwhile, Ravencrest failed to answer the complaint, and the Knoxes obtained a default judgment against the company for $40,000, plus attorney's fees, costs and interest.  The ROC did not object to entry of default but preserved its objections to payout from the Fund.  Thereafter, the superior court denied the ROC's motion without prejudice, subject to "further determinations" regarding the factual basis of the Knoxes' claim. The parties then filed cross motions for summary judgment to determine whether the Knoxes could recover from the Fund.

¶6          The superior court granted the Knoxes' motion, denied the ROC's cross-motion, and ordered a $30,000 payout.  The ROC timely appealed from the final judgment, and we have jurisdiction pursuant to Article 6, Section 9, of the Arizona Constitution, and A.R.S. §§ 12-120.21(A)(1) (2019) and -2101(A)(1) (2019).

## DISCUSSION

¶7          We review the superior court's grant of summary judgment and its interpretation of the applicable statutes *de novo*.  *See Ramsey v. Ariz. Registrar of Contractors*, 241 Ariz. 102, 105, ¶ 6 (App. 2016); *Tierra Ranchos Homeowners Ass'n v. Kitchukov*, 216 Ariz. 195, 199, ¶ 15 (App. 2007).

¶8          Under the statute then in effect, to recover from the Fund, a claimant needed to establish that he or she was a "person injured" by an "act, representation, transaction or conduct" of a licensed residential contractor.  *See* A.R.S. § 32-1132(A). "Person injured" was defined as

> any owner of residential real property that is . . . *classified as class three property under § 42-12003*.  The property must also be actually occupied or *intended to be occupied* by the owner as a residence including community property, tenants in common or joint tenants who are damaged by the failure of a residential contractor or a dual licensed contractor to adequately build or improve a residential structure or appurtenance on that real property.

A.R.S. § 32-1131(3) (emphases added).

¶9          The ROC argues the Knoxes were not "persons injured" under § 32-1131(3) because their property was not classified as class three under

the Tax Code.  *See* A.R.S. § 42-12003(A)(1) (2019) (defining class three property).

**¶10**　　　　As relevant, the referenced tax statute defines class three as "[r]eal and personal property and improvements to the property that are used as the owner's primary residence." A.R.S. § 42-12003(A)(1). In its brief, the ROC asserted this definition excludes vacant land or a home under construction because neither can be occupied.  This requirement was the premise of the ROC's contention that the Knoxes were not "persons injured" under § 32-1131(3): Because the Knoxes' home was never completed, it was never occupied ("used"), it never became a class three property for tax purposes, and, as a result, it could not be the basis of a claim for recovery under § 32-1131(3).

**¶11**　　　　Section 32-1131(3), however, allowed a claim concerning property that was either "actually occupied or *intended to be occupied* by the owner as a residence." A.R.S. § 32-1131(3) (emphasis added).  The language allowing a claim by an owner who did not currently occupy the home, but who intended to occupy it at some point in the future, seems inconsistent with a requirement in the Tax Code that a home must be currently occupied. The ROC's view of § 32-1131(3) would give primacy to the actual-occupancy requirement, so that, as here, when a construction contract was canceled after the owner pays a deposit but before work begins, the owner would not be able to recover from the Fund because the owner did not occupy the home (as his primary residence or otherwise).  *See* A.R.S. §§ 32-1131(A), 42-12003(A)(1).

**¶12**　　　　That reasoning, however, arguably renders superfluous the provision in § 32-1131(3) that allowed a claim by an owner who only "intended to occupy" a home.  Ordinarily, we will not construe a statute to render portions of the text superfluous. *Grand v. Nacchio*, 225 Ariz. 171, 175, ¶ 22 (2010).  We are reluctant to do so here, particularly when the legislature has specifically provided for recovery when a contractor performs no work and delivers no materials after receiving the owner's deposit.  A.R.S. § 32-1132(A) (when otherwise-qualified owner has paid a "deposit or down payment and no actual work is performed or materials are delivered," owner may recover from the Fund an amount equal to the deposit, plus interest, up to $30,000).

**¶13**　　　　Citing *Hayden Partners Ltd. P'ship v. Maricopa County*, 166 Ariz. 121, 123 (App. 1990), the ROC suggested at oral argument that owners like the Knoxes might be able to win a class-three classification for their lot before their home is ready for occupancy.  The current version of the statute

at issue in *Hayden Properties* is A.R.S. § 42-12051 (2019), which, as relevant here, provides:

> A. For the purposes of classifying property under article 1 of this chapter, partially completed or vacant improvements on the land . . . shall be classified according to their intended use as demonstrated by objective evidence.
>
> B. For property that is not valued by the department, an improvement on the land is considered to be partially completed when the foundation of the structure or structures to be located on the property is in place.

Under § 42-12051, a class-three tax classification seemingly would not hinge solely on whether a new home has an occupancy permit or is used as a residence. Instead, a "partially completed" new home could be eligible for class-three designation based on "objective evidence" of the owner's intent to occupy the home. And, under subpart (B) of the statute, a new home would be considered "partially completed when the foundation" of the home "is in place."

**¶14** As applied here, § 42-12051 allows us to reconcile the language in § 32-1131(3) that on the one hand required a class-three classification (as relevant, given only to property "used as the owner's primary residence") but at the same time allowed recovery upon proof that the owner merely "intended" to occupy the home. Read together with § 42-12051, owners like the Knoxes who claimed their contractor absconded with their down payment did not need not wait to seek recovery from the Fund until they could afford to pay another contractor to complete their home. When construction was only "partially completed," owners could satisfy the occupancy requirements of the Tax Code and § 32-1131(3) by showing they intended to occupy the home when it was finished.[2]

**¶15** The Knoxes point to § 32-1132(A), which, as noted, allows recovery by a "person injured" who has paid a deposit to a contractor who

---

[2] We invited the Knoxes to file a supplemental brief addressing the argument the ROC made for the first time at argument. In their brief, the Knoxes argue A.R.S. § 42-12051 cannot trump a statutory requirement in the Tax Code that an owner "actually occupy the home." But "actually occupy" was a requirement imposed by § 32-1131(3), not the Tax Code. And § 32-1131(3) allowed a claim by a qualifying owner who merely intends to occupy the home.

abandons the project without doing any work. The Knoxes contend that provision demonstrates the legislature's intent to allow a remedy in a situation such as theirs. We agree that in a case such as this, a contractor's wrongful refusal to return a down payment may constitute "damage" for which a qualified owner may recover from the Fund. But we cannot disregard the explicit language in § 32-1131(3) that establishes as a prerequisite to recovery that the property must have a class-three tax classification. There is no question that the Knoxes' property lacks such a classification. Accordingly, they are not entitled to recover from the Fund.

## CONCLUSION

**¶16** We reverse the judgment of the superior court and remand for any additional necessary proceedings consistent with this decision.

