Kris LINDBLOM, et al., Plaintiffs,

v.

**MOBILE TELECOMMUNICATIONS TECHNOLOGIES CORP., et al.,
Defendants.**

No. Civ.A. 97–0337.

United States District Court,
District of Columbia.

Dec. 4, 1997.

Jonathan Watson Cuneo, Cuneo Law Group, P.C., Washington, DC, Sharon T. Maier, Joseph D. Daley, Kirk B. Hulett, Milberg, Weiss, Bershad, Hynes & Lerach, San Diego, CA, for Kris Lindblom, Jack Fefer.

Thomas Francis Cullen, Jr., James D. Wareham, Jones, Day, Reavis & Pogue, Washington, DC, John W. Edwards, II, Brian A. Troyer, Jones, Day, Reavis & Pogue, Cleveland, OH, for Mobile Telecommunications Technologies Corp., Skytel Corp., Leonard G. Kriss, Thomas G. Barksdale, Calvin C. Laroche, Jai P. Bhagat, John N. Palmer.

Charles Jay Landy, Bruce T. Carton, Shaw, Pittman, Potts & Trowbridge, Washington, DC, John C. Henegan, Leslie Joyner Bobo, Butler, Snow, O'Mara, Stevens & Cannada, Jackson, MS, for J. Robert Fugate.

George Anthony Borden, Williams & Connolly, Washington, DC, for M. Bernard Puckett.

Jonathan Watson Cuneo, Cuneo Law Group, P.C., Washington, DC, for Eddie K. Brasfield, James M. Bruchs, Dr. Henry Sanders.

## MEMORANDUM AND ORDER

JACKSON, District Judge.

### I.

This purported class-action securities fraud case is brought by two citizens of New Jersey and Florida, respectively, who purchased a total of 500 shares of a publicly traded Delaware corporation headquartered in Mississippi. At the relevant period in 1995–1996, approximately 50 million shares of the corporation were outstanding. How numerous the class may be is not alleged.

What is alleged, however, is that between mid-September 1995 and the end of February 1996 plaintiffs Kris Lindblom and Jack Fefer bought common stock of the defendant Mobile Telecommunications Technologies Corporation ("MTel"), during which time the price went from over $36 per share to approximately $12 per share. Plaintiffs charge that the nine named defendants, two corporations and seven MTel "insider" individuals, defrauded purchasers of MTel stock during that period in violation of Section 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. §§ 78j(b) and 78t(a), and Rule 10b–5 of the Securities and Exchange Commission, 17 C.F.R. § 240.10b–5. According to plaintiffs, defendants knowingly and intentionally misrepresented the financial prospects of a new MTel business venture and failed to disclose the existence of significant technical flaws in the venture's operational performance.

The complaint alleges that, between January 19, 1995, and February 22, 1996 (defined as the "Class Period"), MTel commenced marketing a novel two-way electronic paging system designed to enable subscribers to communicate directly (and in text) with one another utilizing transmitter-receiver paging devices (or a pager and personal computer) *via* the system's "network operations center." The system was developed by Destineer corporation, an MTel subsidiary not named here a defendant, but operated and sold to subscribers by SkyTel Corporation ("SkyTel"), also a wholly owned subsidiary of

MTel, with offices in, *inter alia*, Washington, D.C. SkyTel *is* named as a defendant.[1]

The case is presently before the Court on the motion of the defendant SkyTel to dismiss the complaint pursuant to Fed.R.Civ.P. 12(b)(6) for failure to state a claim *against SkyTel* with the requisite particularity in accordance with the mandate of Fed.R.Civ.P. 9(b). SkyTel contends, *inter alia*, that the public statements attributable to SkyTel itself and claimed by plaintiffs to be false or misleading are not actionable as pleaded without more specificity as to how they could be deemed fraudulent, and that SkyTel cannot be held vicariously liable for any such statements made by others, including co-defendants. Plaintiffs argue that SkyTel and MTel, although nominally separate corporate entities, acted in concert with the individual defendants, are essentially a single seller of securities for Section 10(b)/Rule 10b–5 purposes, and were jointly engaged in efforts to increase the value of MTel stock by fraudulent means.

Section 10(b) provides, in pertinent part, that it shall be unlawful for any person "... [t]o use or employ, *in connection with the purchase or sale of any security* ..., any manipulative or deceptive device or contrivance...." 15 U.S.C. § 78j(b) (emphasis supplied). The implementing rule of the Securities and Exchange Commission, Rule 10b–5, more precisely defines the proscribed conduct as the making of "any untrue statement of a material fact or [the omission from any such statement of] a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading...." 17 C.F.R. § 240.10b–5(b).

Although, in passing upon a motion to dismiss a complaint, the Court must regard the complaint in a light most favorable to the plaintiffs, *see Scheuer v. Rhodes,* 416 U.S. 232, 236–37, 94 S.Ct. 1683, 1686–87, 40

L.Ed.2d 90 (1974), Fed.R.Civ.P. 9(b) expressly requires that, in fraud cases, "the circumstances constituting fraud shall be stated with particularity." Moreover, in assessing the viability of the instant claim against SkyTel, the Court must take into account the pleading requirements imposed by the Private Securities Litigation Reform Act of 1995, 15 U.S.C. §§ 78u–4, 78u–5 ("PSLRA"), for still greater particularity in stating a private Section 10(b)/Rule 10b–5 class action claim.[2] The provision of the PSLRA most pertinent to the instant motion relates to the pleading of scienter; specifically, the complaint must "state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind," 15 U.S.C. § 78u–4(b)(2), and must do so, as to each allegedly false or misleading statement of fact charged to that defendant.

The complaint is 95 pages and 142 paragraphs in length, and most assuredly does not lack for particulars. The question is whether, as to the defendant SkyTel, they are the necessary particulars to satisfy the pleading requirements of Fed.R.Civ.P. 9(b) and the PSLRA.

■ A wholly owned corporate subsidiary of a corporate parent is not liable for the deceitful statements of its parent corporation. A subsidiary owes no duty of disclosure to the shareholders of the parent whose own stock is the only stock being offered for purchase or sale. *See In re Kidder Peabody Sec. Litig.,* No. 94 CIV 3954(JFK), 1995 WL 590624, at *4 (S.D.N.Y. Oct. 4, 1995). Nor can it be held liable as a co-conspirator or an aider and abetter of its parent's fraudulent representations. *Central Bank of Denver v. First Interstate Bank of Denver,* 511 U.S. 164, 114 S.Ct. 1439, 128 L.Ed.2d 119 (1994); *In re GlenFed, Inc. Sec. Litig.,* 60 F.3d 591, 592 (9th Cir.1995) (en banc).[3]

---

**1.** SkyTel's presence in Washington, D.C. and its presence in this case as a defendant, is the principal basis relied on by plaintiffs for venue in the District of Columbia. A similar case against MTel alone and various individual defendants in the U.S. District Court for the Southern District of Mississippi, although involving different alleged misrepresentations and failures to disclose, was dismissed for failure to state an actionable claim in November of 1995. *In re Mobile Tele-*

*comm. Tech. Corp. Sec. Litig.,* 915 F.Supp. 828 (S.D.Miss.1995).

**2.** The PSLRA applies to any such action filed on or after its effective date of December 22, 1995. This case was filed February 20, 1997.

**3.** *But see In re Towers Fin. Corp. Noteholders Litig.,* 936 F.Supp. 126 (S.D.N.Y.1996).

■ Of more than 60–odd statements set forth in the complaint as emanating from "the defendants" and alleged to be false or misleading, only two are attributed to SkyTel itself. On September 15, 1995 and December 7, 1995, SkyTel issued press releases—both reportedly issued in New York—that, in substance, described the manner in which the two-way paging system was supposed to work, stated where the service was available, and sought to explain why it ought to be of value to business people. (Compl.¶¶ 78, 103). Neither statement makes any mention whatsoever of financial data or relates the product in any way to MTel's profitability.

Every other public utterance alleged to have been misleading is attributed by the complaint to a defendant or defendants other than SkyTel, and virtually all of them dealt expressly with the financial circumstances of MTel itself, including, but certainly not confined to the prospects for the two-way paging system marketing campaign, the progress made in addressing the system's technical problems, and the rewards anticipated by MTel in the future.

The first particular of consequence omitted from the complaint, therefore, is an allegation of fact from which it could be found that SkyTel's press releases were made, as Section 10(b) requires, "in connection with the purchase or sale of any security." SkyTel was not selling stock. It was selling—or attempting to sell—a paging system that was not performing to expectations. If purchasers of any commodity were entitled to complain of having been deceived by SkyTel's press releases it would be customers who subscribed to its flawed paging system.

Closely related, and equally fatal, is the failure of the complaint to allege facts from which it could be found that SkyTel (or, for that matter, any other defendant) actually knew, on September 19th and December 7th, 1995, that the problems with the two-way paging system were pandemic (if, indeed, they were), insoluble, and of a magnitude to cast such doubt upon the success of the entire venture as to give rise to a duty of disclosure *by SkyTel* to the financial community when it issued its press releases.

Finally, the complaint fails to allege in even conclusory fashion, much less with any particularity, that the market analysts who were presumably deceived as to MTel's prospects for profitability, and upon whom plaintiffs ostensibly relied in making their own purchases of MTel stock, were even aware of the two public utterances attributed to SkyTel. To the extent the analysts are quoted in the complaint they identify MTel and its executives as their sources.

The motion to dismiss the complaint as to SkyTel Corporation will be granted.

## II.

■ Venue for Section 10(b)/Rule 10b–5 cases is prescribed by the Securities Exchange Act of 1934 as being laid in any district in which an "act or transaction constituting a violation occurred," or in which any defendant is "found" or is "an inhabitant or transacts business." 15 U.S.C. § 78aa. With the dismissal of SkyTel as a defendant, and the absence of any allegation that an "act or transaction constituting a violation" occurred in the District of Columbia, any nexus between the District of Columbia and this action is attenuated to a minimum.

Defendants earlier moved to transfer this case pursuant to 28 U.S.C. § 1404(a) to the U.S. District Court for the Southern District of Mississippi. The motion was denied without prejudice. Whether or not the District of Columbia was an appropriate venue earlier, before SkyTel's dismissal, it is clear that it is now perhaps the least convenient forum, in terms of the factors it is permissible for the Court to consider, among the several candidate jurisdictions, including the Southern District of Mississippi. The parties are therefore invited to submit renewed motions to transfer to either the Southern District of Mississippi or any other appropriate district within 30 days, failing which the Court will, *sua sponte,* transfer this case to the Southern District of Mississippi.

It is, this 4th day of December, 1997,

ORDERED, that the motion of the defendant SkyTel Corporation to dismiss the complaint is granted, and the complaint is dis-

missed with prejudice as to the defendant SkyTel Corporation.