SUPREME COURT OF ARIZONA
En Banc

| | |
|---|---|
| JAMES C. SELL, Trustee of the Participating Trust established under Debtors' First Amended Joint Plan of Reorganization dated 7-7-06 in U.S. Bankruptcy Case No. 05-27993-PHX-GBN, on behalf of the Trust's Participating Investors, | ) Arizona Supreme Court ) No. CV-12-0211-PR ) ) Court of Appeals ) Division One ) No. 1 CA-SA 12-0105 ) ) ) Maricopa County |
| Petitioner, | ) Superior Court ) No. CV2007-005734 ) |
| v. | ) ) |
| THE HONORABLE J. RICHARD GAMA, JUDGE OF THE SUPERIOR COURT OF THE STATE OF ARIZONA, in and for the County of Maricopa, | ) **O P I N I O N** ) ) ) ) |
| Respondent Judge, | ) ) |
| SQUIRE & COMPANY, PC, a Utah professional corporation; LYNN G. HILLSTEAD and JANE DOE HILLSTEAD, husband and wife; DWAYNE ASAY and JANE DOE ASAY, husband and wife; LEWIS AND ROCA, LLP, an Arizona limited liability partnership; KEITH BEAUCHAMP and JULIET LIM, husband and wife, | ) ) ) ) ) ) ) ) ) ) ) ) ) |
| Real Parties in Interest. | ) ) |

Appeal from the Superior Court in Maricopa County
The Honorable J. Richard Gama, Judge

**AFFIRMED**
_____

Order of the Court of Appeals Division One
Filed May 10, 2012
_____

SHERMAN & HOWARD LLC                                    Phoenix
      By    Robert C. Hackett
            Thomas M. Quigley
            David W. Garbarino
            Jamey G. Anderson
Attorneys for James C. Sell

PERKINS COIE LLP                                       Phoenix
      By    H. Michael Clyde
            Todd R. Kerr
            Tony Caliendo
Attorneys for Squire & Company, PC, Lynn G. Hillstead,
Jane Doe Hillstead, Dwayne Asay, and Jane Doe Asay

OSBORN MALEDON PA                                      Phoenix
      By    William J. Maledon
            Geoffrey M. T. Sturr
            Thomas L. Hudson
            James K. Rogers
Attorneys for Lewis and Roca LLP, Keith Beauchamp, and
Juliet Lim

ARIZONA CORPORATION COMMISSION                         Phoenix
      By    Matthew J. Neubert
            Julie A. Coleman
Attorneys for Amicus Curiae Arizona Corporation Commission

BEGAM & MARKS PA                                       Phoenix
      By    Stanley J. Marks
Attorney for Amicus Curiae Public Justice, PC

MITCHELL & ASSOCIATES                                  Phoenix
      By    Sarah K. Deutsch

And

TIFFANY & BOSCO PA                                     Phoenix
      By    Richard G. Himelrick
Attorneys for Amicus Curiae Mortgages Ltd. Investors
_____

**P E L A N D E R**, Justice

¶1      We granted review to determine whether the Arizona
Securities Act ("ASA"), A.R.S. §§ 44-1801 to -2126, authorizes a

cause of action for secondary liability based on aiding and abetting others' primary securities fraud. More than three decades ago, based on federal case law that has since changed, we recognized such aiding and abetting claims. *State v. Superior Court (Davis)*, 123 Ariz. 324, 599 P.2d 777 (1979), *overruled in part on other grounds by State v. Gunnison*, 127 Ariz. 110, 618 P.2d 604 (1980). But in light of *Central Bank of Denver v. First Interstate Bank of Denver*, 511 U.S. 164 (1994), and finding no compelling reason to depart from that case, we hold that a separate claim for aiding and abetting does not exist under the ASA, overruling *Davis*'s contrary holding.

**I.**

¶2      James C. Sell is the trustee of a trust created to recover losses suffered by investors in an allegedly fraudulent investment scheme known as Mathon Fund, LLC. Sell filed this action under the ASA against various persons and entities that directly participated in the scheme, as well as others who allegedly assisted by rendering professional services. This latter category of defendants included an accounting firm, Squire and Company ("Squire"), the law firm of Lewis and Roca, and several of those firms' employees. Sell's multi-count complaint alleged that those professional defendants were primarily liable for securities fraud under A.R.S. §§ 44-1991 and -2003 (Count One), and secondarily liable for aiding and

3

abetting others' statutory violations (Count Two).[1]

**¶3** In 2008, Superior Court Judge Janet Barton dismissed Count One against the Lewis and Roca defendants and both counts against Squire, finding no legal basis for the Count Two claim because the ASA does not expressly "create aiding and abetting liability" for securities fraud, and because *Central Bank* overturned the federal case law on which *Davis* had relied. After Judge Barton rotated off the case and Superior Court Judge Douglas Rayes was assigned, Sell moved for reconsideration. Judge Rayes granted that motion as to Count Two, ruling that our decision in *Davis* was still controlling law, even if *Central Bank* called its reasoning into question.

**¶4** In 2011, Squire, joined by Lewis and Roca, moved for summary judgment on the aiding and abetting claim, arguing that the ASA did not create such secondary liability.[2] Superior Court Judge Richard Gama, who then presided over the case, granted the motion. The judge acknowledged that *Davis* had not been overruled, but found "nothing to suggest [that this Court] will deviate from *Central Bank* when it does confront the issue."

**¶5** Without comment, the court of appeals declined

---

[1] We refer throughout this opinion to Sell's third-amended complaint.

[2] Squire has since settled with Sell and is no longer a party to this action. Only the Lewis and Roca defendants remain in the proceedings before us.

jurisdiction over Sell's special action petition. Although the case is in an interlocutory posture, we granted review because whether aiding and abetting liability exists under the ASA is a recurring legal question of statewide importance on which lower courts are divided. We have jurisdiction under Article 6, Section 5(3) of the Arizona Constitution and A.R.S. § 12-120.24.

**II.**

¶6         Enacted in 1951, the ASA makes it illegal for any person, "directly or indirectly," to commit any of the following securities-related acts or omissions:

> 1.  Employ any device, scheme or artifice to defraud.
>
> 2.  Make any untrue statement of material fact, or omit to state any material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading.
>
> 3.  Engage in any transaction, practice or course of business which operates or would operate as a fraud or deceit.

A.R.S. § 44-1991(A).

¶7         That statute is "almost identical to the antifraud provisions of the 1933 Securities Act [§ 17(a)], 15 U.S.C. § 77q." *Davis*, 123 Ariz. at 331, 599 P.2d at 784. But unlike the 1933 Act, which "contains no express private cause of action," "the ASA explicitly provides for a private cause of action for violations of § 44-1991 in [A.R.S.] § 44-2001(A)." *Grand v. Nacchio*, 225 Ariz. 171, 174 ¶ 12, 236 P.3d 398, 401

5

(2010).  And Arizona's private cause of action "may be pursued against 'any person, including any dealer, salesman or agent, who made, participated in or induced the unlawful sale or purchase.'"  *Id.* ¶ 13 (quoting A.R.S. § 44-2003(A)).[3]  The federal act contains no such language.

¶8     "The legislature intended the ASA 'as a remedial measure' for the 'protection of the public' and therefore specified that the act be 'liberally construed.'"  *Id.* ¶ 16 (quoting 1951 Ariz. Sess. Laws, ch. 18, § 20 (1st Reg. Sess.)).  The ASA's language "confirms a broad intent to sanction wrongdoing in connection with the purchase or sale of securities."  *Id.*

¶9     In *Davis*, 123 Ariz. at 331–32, 334, 599 P.2d at 784–85, 787, we found actionable the plaintiffs' claims that certain defendants aided and abetted securities fraud under the ASA,

---

[3]     In 1996, the Arizona Legislature amended several sections of the ASA and added to § 44-2003(A) the following exception, which has no federal counterpart:  "No person shall be deemed to have participated in any sale or purchase solely by reason of having acted in the ordinary course of that person's professional capacity in connection with that sale or purchase."  A.R.S. § 44-2003(A); *see* 1996 Ariz. Sess. Laws, ch. 197, § 3 (2nd Reg. Sess.).  The Lewis and Roca defendants suggest that this exception applies to shield them from liability.  We need not address that argument, however, because we find not actionable the aiding and abetting allegation in Count Two, the only claim at issue here.

6

§ 44-1991.[4]  We relied exclusively on two federal district court decisions that had interpreted § 17(a) of the 1933 Securities Act, 15 U.S.C. § 77q(a), and § 10(b) of the 1934 Securities Exchange Act, 15 U.S.C. § 78j(b), to recognize some form of aiding and abetting liability for securities fraud.  *Davis*, 123 Ariz. at 331-32, 599 P.2d at 784-85 (citing *SEC v. Nat'l Student Mktg. Corp.*, 402 F. Supp. 641 (D.D.C. 1975); *SEC v. Scott Taylor & Co.*, 183 F. Supp. 904 (S.D.N.Y. 1959)).

¶10    *Davis* neither analyzed the federal cases it cited nor evaluated whether § 44-1991 or any other section of the ASA independently authorized aiding and abetting liability.  Rather, because the federal and state statutory schemes were "almost identical," and federal cases held that "[a] defendant who aids and abets another's violation respecting the use of manipulative or deceptive devices in the sale of stock . . . [was] liable as a principal," we saw "no reason why one who aids and abets another in violating A.R.S. § 44-1991 should not also be held liable as a principal."  *Id.* at 331, 599 P.2d at 784.

¶11    A year later, we revisited and overruled *Davis* to the extent it required scienter in an action under what is now § 44-1991(A)(2).  *See Gunnison*, 127 Ariz. at 112-13, 618 P.2d at 606-07*.*  We did so because, after *Davis*, the United States Supreme

_____

[4]    In *Davis*, this Court referred to provisions now codified in § 44-1991(A).

7

Court held in *Aaron v. SEC*, 446 U.S. 680, 701–02 (1980), that scienter is not an element for an action under § 17(a)(2) of the 1933 Act. *Gunnison*, 127 Ariz. at 113, 618 P.2d at 607.

¶12 In support of our holding in *Gunnison*, this Court noted that "[u]nless there is a good reason for deviating from the United States Supreme Court's interpretation, we will follow the reasoning of that court in interpreting sections of our statutes which are identical or similar to federal securities statutes." *Id.* at 112–13, 618 P.2d at 606–07. Although not required to do so, we nonetheless found it "helpful, for consistency in the application of the law, to be harmonious with the United States Supreme Court." *Id.* at 112, 618 P.2d at 606.

¶13 Fifteen years after *Davis*, the United States Supreme Court held in *Central Bank* that "a private plaintiff may not maintain an aiding and abetting suit under § 10(b)" of the 1934 Act. 511 U.S. at 191. The Court found no express authorization for such claims in the act itself and no good reason to judicially imply potential liability for aiding and abetting when Congress had not seen fit to do so. *Id.* at 175-90. Rejecting the notion that "the phrase 'directly or indirectly' in the text of § 10(b) covers aiding and abetting," the Court pointed out that "aiding and abetting liability extends beyond persons who engage, even indirectly, in a proscribed activity; aiding and abetting liability reaches persons who do not engage

8

in the proscribed activities at all, but who give a degree of aid to those who do." *Id.* at 175-76.

¶14      In *Central Bank*, the Court found its "role limited when the issue is the scope of conduct prohibited by the statute," and therefore "adhere[d] to the statutory text in resolving it." *Id.* at 187-88. And, the Court noted, the issue "is not whether imposing private civil liability on aiders and abettors is good policy but whether aiding and abetting is covered by the statute." *Id.* at 177. The statutory scheme, the Court said, cannot be judicially amended "to create liability for acts that are not themselves manipulative or deceptive within the meaning of the statute," and "[p]olicy considerations cannot override" the statute's text and structure. *Id.* at 177-78, 188.

¶15      When the Arizona Legislature amended the ASA in 1996, after both *Davis* and *Central Bank*, it expressly declined to specify whether aiding and abetting liability exists under the ASA. 1996 Ariz. Sess. Laws, ch. 197, § 11(B) (2nd Reg. Sess.) ("Nothing in this act . . . determines whether or in what circumstances aiding and abetting liability exists under Title 44, chapter 12, Arizona Revised Statutes."). Thus, the legislature neither approved nor rejected either case, apparently deferring to the judiciary the question of whether a cause of action for aiding and abetting a violation of the ASA

exists.  This Court recently acknowledged, but did not decide, that issue in *Grand*, 225 Ariz. at 177 ¶ 31, 236 P.3d at 404.  It is squarely before us now.

**III.**

**¶16**      "Our goal in interpreting statutes is to give effect to the intent of the legislature."  *Estate of Braden ex rel. Gabaldon v. State*, 228 Ariz. 323, 325 ¶ 8, 266 P.3d 349, 351 (2011) (internal quotation marks omitted).  "When the plain text of a statute is clear and unambiguous," it controls unless an absurdity or constitutional violation results.  *State v. Christian*, 205 Ariz. 64, 66 ¶ 6, 66 P.3d 1241, 1243 (2003).  But when, as here, the "text alone does not resolve the parties' dispute," we must "attempt to glean and give effect to the legislature's intent, considering the statute's context, effects and consequences, and spirit and purpose."  *Am. Family Mut. Ins. Co. v. Sharp*, 229 Ariz. 487, 490-91 ¶ 10, 277 P.3d 192, 195-96 (2012).

**¶17**      As noted above, the legislature expressly intended to omit from the ASA any mention of aiding and abetting liability. Thus, the ASA does not expressly authorize such claims or liability.  Although the issue here does not require us to delineate the precise boundaries of securities fraud under § 44-1991(A), that statute's text tracks the language of SEC Rule 10b-5, 17 C.F.R. § 240.10b-5, and of § 17(a) of the 1933 Act, 15

10

U.S.C. § 77q(a).  *See Grand*, 225 Ariz. at 173–74 ¶ 11, 236 P.3d at 400–01.  Sell has not established any meaningful difference between a claim under § 44-1991(A) and one under those federal laws or under § 10(b) of the 1934 Act, the provision at issue in *Central Bank*.

¶18     In interpreting a state statutory scheme such as the ASA, this Court will give less weight and not necessarily defer to federal case law that construes a parallel federal statute when the state and federal statutory provisions or their underlying policies materially differ.  *See Bunker's Glass Co. v. Pilkington PLC*, 206 Ariz. 9, 12-13 ¶¶ 8, 13, 75 P.3d 99, 102-03 (2003) (declining "to rigidly follow federal precedent on every issue of antitrust law regardless of whether differing concerns and interests exist in the state and federal systems," and because doing so would "thwart[] the [Arizona] legislative intent" and would not necessarily achieve uniformity); *cf. Gunnison*, 127 Ariz. at 112–13, 618 P.2d at 606–07.  Because we find no such substantial differences here, however, we will interpret the ASA by following settled federal securities law unless there is a good reason to depart from that authority. *Gunnison*, 127 Ariz. at 112–13, 618 P.2d at 606–07.  This approach is consistent with the legislature's intent, as expressed in 1996, regarding judicial interpretation of the ASA. 1996 Ariz. Sess. Laws, ch. 197, § 11(C) (2nd Reg. Sess.) ("It is

11

the intent of the legislature that in construing the [ASA], the courts may use as a guide the interpretations given by the . . . federal or other courts in construing substantially similar provisions in the federal securities laws of the United States.").

¶19      Although we are not bound by *Central Bank* in determining an issue of state statutory law, we find that case persuasive support for rejecting aiding and abetting liability under the ASA.  Much of the Supreme Court's reasoning in *Central Bank* regarding the federal statute and congressional intent applies with equal force to the ASA and the Arizona Legislature's intent.

¶20      As noted above, the legislature did not expressly authorize secondary liability for aiding and abetting in either the sections setting forth the types of actionable fraudulent practices under the Act, A.R.S. §§ 44-1991 to -2000, or the sections prescribing the civil remedies and potential parties who may be sued for securities fraud, *id.* §§ 44-2001 to -2005.[5] No ASA provision mentions the terms "aiding" or "abetting."  *See Cent. Bank*, 511 U.S. at 177 ("If . . . Congress intended to impose aiding and abetting liability, we presume it would have

---

[5]    As amicus curiae Arizona Corporation Commission acknowledges:  "The [ASA] does not expressly provide for a cause of action against a secondary actor for aiding and abetting the primary violation of the Act by another person."

12

used the words 'aid' and 'abet' in the statutory text.  But it did not.").

¶21    In contrast, the legislature has expressly recognized aiding and abetting liability in other statutes.  *See, e.g.*, A.R.S. § 12-812 (aiding and abetting liability for violating public nuisance obscenity statutes); *id.* § 20-463(A)(5) (assisting and abetting insurance fraud); *id.* § 32-1055(D)(5) (aiding and abetting liability for collection agencies); *id.* § 46-215(A)(3) (aiding and abetting welfare fraud).  As the Court in *Central Bank* remarked, Congress "has taken a statute-by-statute approach to civil aiding and abetting liability" and "has been quite explicit in imposing [such] liability in other instances."  511 U.S. at 182-83.  The same can be said of the Arizona Legislature which, like Congress, surely knows "how to impose aiding and abetting liability when it [chooses] to do so."  *Id.* at 176.  As did the Court in *Central Bank*, we find it "not plausible to interpret the statutory silence as tantamount to an implicit [legislative] intent to impose . . . aiding and abetting liability."  *Id.* at 185; *cf. Estate of Braden*, 228 Ariz. at 327-28 ¶ 16, 266 P.3d at 353-54 (explaining that when a statute specifically limits those who may be held liable for the statutorily proscribed conduct, liability cannot be extended beyond the statutory categories).

¶22    Despite the notable absence in the ASA of express

13

authorization for aiding and abetting claims, Sell argues that we should reject *Central Bank*'s reasoning and conclusion because different policy objectives underlie the ASA and federal securities laws. He correctly notes that, from its inception, the ASA was intended to be remedial, protective of the public, and liberally construed. *See supra* ¶ 8. In contrast, some authority suggests that, although Congress crafted the 1933 and 1934 Acts to protect investors, the central purpose of those acts is to ensure full disclosure and honest markets. *Reves v. Ernst & Young*, 494 U.S. 56, 60 (1990); *Ernst & Ernst v. Hochfelder*, 425 U.S. 185, 194–95 (1976).

¶23 But even if we accept Sell's assertion that the primary purposes of the ASA and the federal securities acts are somehow different, his argument that we should depart from *Central Bank* is unpersuasive. "A liberal construction is not synonymous with a generous interpretation, and we will not impose a burden or liability not within the terms or spirit of the law." *Estate of Braden*, 228 Ariz. at 325 ¶ 9, 266 P.3d at 351 (internal quotation marks, citations, and alterations omitted). Because § 44-2001(A), unlike federal securities law, expressly provides a private cause of action for violations of § 44-1991(A), *Grand*, 225 Ariz. at 174 ¶ 12, 236 P.3d at 401, the legislature, not the courts, should define the scope of liability under that statutory scheme. In short, we decline to

14

judicially recognize potential securities-related claims that are not clearly established or necessarily implied by the ASA.

**¶24** Sell also contends that § 44-2003's language is broad enough to include aiding and abetting liability, even though not expressly stated. As he points out, that statute has no federal counterpart and permits an action to be brought under § 44-2001 against "any person . . . who made, *participated in* or *induced* the unlawful sale or purchase [of securities]." A.R.S. § 44-2003(A) (emphasis added).

**¶25** That language, however, supports a claim for primary liability under § 44-1991; it does not create a separate cause of action for, or secondary liability based on, aiding and abetting. According to Sell, the Lewis and Roca defendants "participated in" the alleged securities violations within the meaning of § 44-2003(A). *See Grand*, 225 Ariz. at 175 ¶ 21, 236 P.3d at 402 (citing *Standard Chartered PLC v. Price Waterhouse*, 190 Ariz. 6, 21–22, 945 P.2d 317, 332–33 (App. 1996)). If so, Sell's claim is for primary liability under § 44-1991,[6] arguably rendering his aiding and abetting claim superfluous — a point Sell conceded at oral argument but which we need not decide.

**¶26** Sell also argues that even though the ASA does not

---

[6] Although the superior court dismissed Sell's Count One claim for primary liability, that ruling apparently has not been reduced to a final judgment and is not at issue before us.

15

expressly authorize an aiding and abetting claim, we should apply common law principles to recognize one. Although the ASA's remedy provisions do not limit "any statutory or common law right of any person in any court for any act involved in the sale of securities," A.R.S. § 44-2005, Sell would have us superimpose a common law aiding and abetting claim on the ASA's purely statutory provisions. We decline to do so.

¶27 Aiding and abetting liability perhaps is most commonly applied under Arizona's criminal code. *See* A.R.S. §§ 13-301 to -304. Our courts have also recognized certain forms of civil liability for aiding and abetting in torts. For example, we have noted that "Arizona recognizes aiding and abetting as embodied in Restatement [(Second) of Torts] § 876(b)," and "a person who aids and abets a tortfeasor is himself liable for the resulting harm to a third person." *Wells Fargo Bank v. Ariz. Laborers, Teamsters & Cement Masons Local No. 395 Pension Trust Fund*, 201 Ariz. 474, 485 ¶ 31, 38 P.3d 12, 23 (2002). Thus, as a matter of common law, our courts have recognized aiding and abetting liability in various tort-related contexts. *Chalpin v. Snyder*, 220 Ariz. 413, 417 ¶¶ 13-14, 424 ¶ 45, 207 P.3d 666, 670, 677 (App. 2008) (multiple tort claims against an attorney); *Sec. Title Agency, Inc. v. Pope*, 219 Ariz. 480, 491 ¶¶ 44-46, 200 P.3d 977, 988 (App. 2008) (breach of fiduciary duty); *Dawson v. Withycombe*, 216 Ariz. 84, 102 ¶¶ 49-50, 163 P.3d 1034, 1052

16

(App. 2007) (fraud).

¶28      But those decisions do not persuade, let alone compel, us to extend common law aiding and abetting liability to the ASA.  As discussed above, unlike § 17(a) and § 10(b) of the federal securities acts, the ASA, § 44-2001(A), expressly authorizes a private cause of action for violations of § 44-1991(A).  *Grand*, 225 Ariz. at 174 ¶ 12, 236 P.3d at 401; *cf. Cent. Bank*, 511 U.S. at 179 ("From the fact that Congress did not attach private aiding and abetting liability to any of the express causes of action in the securities Acts, we can infer that Congress likely would not have attached aiding and abetting liability to § 10(b) had it provided a private § 10(b) cause of action.").  In addition, the ASA prescribes the available remedies and categories of potential defendants, and articulates the "elements of securities fraud."  *Aaron v. Fromkin*, 196 Ariz. 224, 227 ¶ 13, 994 P.2d 1039, 1042 (App. 2000) (citing A.R.S. § 44-1991(A)(2)).

¶29      Accordingly, it would be inappropriate to anchor a finding of aiding and abetting liability under the ASA on common law tort principles.  *See Cent. Bank*, 511 U.S. at 177, 184; *cf. Mann v. GTCR Golder Rauner, L.L.C.*, 483 F. Supp. 2d 884, 919 (D. Ariz. 2007) (declining to extend aiding and abetting liability found under Restatement § 876(b) to statutory violations of Arizona's Uniform Fraudulent Transfer Act).  Instead, we think

17

it is more appropriate for the legislature, if it chooses, to expressly provide for any such claim. *Cf. State ex rel. Horne v. Autozone, Inc.*, 229 Ariz. 358, 363 ¶ 22, 273 P.3d 1278, 1283 (2012) (when a statutory scheme includes certain remedies, a remedy not included "should not be read by the courts into the existing statute"). In that regard, the various policy arguments advanced by Sell and certain amici for preserving aiding and abetting liability under the ASA are better directed to the legislature. *See Cent. Bank*, 511 U.S. at 177, 188-89 (noting competing policy arguments for and against aiding and abetting liability under the federal securities acts, but framing the issue as whether such liability is covered by the statute, not whether it is good policy).

¶30    We are mindful of the importance of stare decisis, and how that doctrine demands caution in overruling a prior decision, especially given the high burden of departing from previous interpretations of a statute. *State v. Hickman*, 205 Ariz. 192, 201 ¶ 38, 68 P.3d 418, 427 (2003). But, adhering to the approach set forth in *Gunnison* and approved in the 1996 legislation, we find sufficient justification to follow *Central Bank* and overrule *Davis*, which was based solely on federal case law that has since changed.[7]

---

[7]    After *Central Bank*, the two federal district courts whose decisions we followed in *Davis* rejected aiding and abetting

18

¶31     Finally, we note that the superior court erred by anticipating that we would revisit and overrule *Davis* after *Central Bank*. The lower courts are bound by our decisions, and this Court alone is responsible for modifying that precedent. *State v. Smyers*, 207 Ariz. 314, 318 ¶ 15 n.4, 86 P.3d 370, 374 n.4 (2004); *see also McKay v. Indus. Comm'n*, 103 Ariz. 191, 193, 438 P.2d 757, 759 (1968) ("Whether prior decisions of the highest court in a state are to be disaffirmed is a question for the court which makes the decisions. Any other rule would lead to chaos in our judicial system."). Trial courts are required to follow the decisions of a higher court, and the superior court here failed to abide by that fundamental principle. We therefore caution lower courts not to depart from binding precedent anticipating that we will overrule existing case law.

**IV.**

¶32     For the reasons stated above, we overrule *Davis* to the extent that it recognizes a cause of action for aiding and

---

claims under federal securities laws. *In re Parmalat Sec. Litig.*, 383 F. Supp. 2d 616, 624 (S.D.N.Y. 2005); *Lindblom v. Mobile Telecomms. Techs. Corp.*, 985 F. Supp. 161, 163 (D.D.C. 1997). Other courts have also refused to judicially imply aiding and abetting claims under state securities laws when the relevant statutes do not expressly authorize such liability. *See, e.g., Conn. Nat. Bank v. Giacomi*, 659 A.2d 1166, 1177 (Conn. 1995); *Atlanta Skin & Cancer Clinic, P.C. v. Hallmark Gen. Partners, Inc.*, 463 S.E.2d 600, 604 (S.C. 1995); *cf. State ex rel. Goettsch v. Diacide Distribs., Inc.*, 561 N.W.2d 369, 374 (Iowa 1997) (recognizing aiding and abetting liability based on express statutory provisions).

19

abetting liability under the ASA. We therefore affirm the superior court's summary judgment in favor of the Lewis and Roca defendants on Count Two of Sell's complaint.


_____
A. John Pelander, Justice

CONCURRING:


_____
Rebecca White Berch, Chief Justice


_____
Robert M. Brutinel, Justice


_____
Peter J. Eckerstrom, Judge[*]


_____
Garye L. Vásquez, Judge[*]

_____

[*]    Pursuant to Article 6, Section 3 of the Arizona Constitution, the Honorable Peter J. Eckerstrom and the Honorable Garye L. Vásquez, Judges of the Arizona Court of Appeals, Division Two, were designated to sit in this matter.