IN THE

# SUPREME COURT OF THE STATE OF ARIZONA

─────────────

**4QTKIDZ, LLC; BLUE PALO SERVICING COMPANY, LLC; AND DANA H. COOK FAMILY PARTNERSHIP, LTD.**
*Plaintiffs/Appellants,*

*v.*

**HNT HOLDINGS, LLC AND BETH FORD, PIMA COUNTY TREASURER,**
*Defendants/Appellees.*

─────────────

No. CV-21-0065-PR
Filed July 27, 2022

─────────────

Appeal from the Superior Court in Pima County
Nos. C20192106, C20192012 and C20182065
The Honorable Charles V. Harrington, Judge
The Honorable Paul E. Tang, Judge
**REVERSED AND REMANDED**

Memorandum Decision of the Court of Appeals, Division Two
Nos. 2-CA-CV 2019-0187, 2 CA-CV 2019-0188 and 2 CA-CV 2019-0190
(Consolidated)
Filed February 8, 2021
**VACATED**

─────────────

COUNSEL:

Eric W. Kessler, Ryan E. Kessler, Eric Bryce Kessler (argued), Kessler Law Group, Scottsdale, Attorneys for 4QTKIDZ, LLC, et al

John Maston O'Neal, Benjamin C. Nielsen (argued), Quarles & Brady LLP, Phoenix, Attorneys for HNT Holdings, LLC

Laura Winsky Conover, Pima County Attorney, Kathryn Ore, Deputy County Attorney, Tucson, Attorneys for Beth Ford, Pima County Treasurer

Ari Ramras, Ramras Legal, PLC, Phoenix, Attorneys for Amicus Curiae Land Title Association of Arizona

Heather M. Hendrix, The Hendrix Law Office, P.L.L.C., Gilbert, Attorney for Amici Curiae Barry C. Becker, Michael J. Doyle, Michael A. Fleishman, Heather M. Hendrix, John J. Lohr, Jr., and Mark L. Manoil

---

CHIEF JUSTICE BRUTINEL authored the opinion of the Court, in which VICE CHIEF JUSTICE TIMMER and JUSTICES BOLICK, LOPEZ, BEENE, MONTGOMERY and KING joined.

---

CHIEF JUSTICE BRUTINEL, opinion of the Court:

¶1        Under A.R.S. § 42-18202, lienholders must notify a property owner of their intent to foreclose before bringing an action to foreclose on the property owner's right to redeem the lien.  We must decide whether § 42-18202's pre-litigation-notice requirement is satisfied upon delivery to the type of addresses specified in the statute, or whether a lienholder's due diligence to obtain service of the notice is always required.  Compelled by the statute's text, context, and structure, we hold that delivery of a pre-litigation notice to each of the three addresses referred to in subsections (A)(1)(a)–(c) is sufficient, even if the lienholder has reason to believe the property owner never received the notice.

## I.        BACKGROUND

¶2        In 2005, HNT Holdings, LLC ("HNT") purchased three contiguous parcels of real property in Oro Valley.  Property tax payments on all three parcels became delinquent.  The petitioners, Dana H. Cook Family Partnership, Ltd. ("Cook"), Blue Palo Servicing Company, LLC ("Blue Palo"), and 4QTKIDZ, LLC ("4QTKIDZ") (collectively, "Lienholders") each purchased a tax lien on one of the parcels and later sought to foreclose on the respective properties.  Each Lienholder mailed a notice of intent to foreclose to the physical address for its respective parcel as well as to an address on Maverick Road, which was HNT's address according to the records of the county assessor and also the tax bill mailing address according to the records of the county treasurer.  All notices were returned as undeliverable.  After the statutorily mandated time, the Lienholders filed complaints to foreclose on their tax liens and attempted to serve the complaints on the HNT statutory agent, ultimately serving

HNT through the Arizona Corporation Commission when initial attempts at service proved unsuccessful.

**¶3** Three separate trial court proceedings resulted in default judgments against HNT, which subsequently moved to set the judgments aside. One court consolidated the Cook and Blue Palo matters for purposes of the hearing and granted HNT's motions, finding the judgments "void for lack of service under [Arizona] Rule [of Civil Procedure] 4.1" as well as "exceptional additional circumstances" warranting relief because due diligence could have resulted in actual service upon HNT. Another trial court also granted HNT's motion in the 4QTKIDZ matter, reasoning that *Jones v. Flowers*, 547 U.S. 220 (2006), requires additional steps when notice provided is known to be defective. In a consolidated appeal, the court of appeals concluded that both methods of service under the statute require notice sent to the *owner*, not a specific address, so that if a lienholder receives the notice back as undeliverable without any additional effort to locate a current address, notice is not sufficient. *4QTKIDZ, LLC v. HNT Holdings, LLC*, Nos. 2 CA-CV 2019-0187, 2 CA-CV 2019-0188, and 2 CA-CV 2019-0190 (Consolidated), 2021 WL 438848, at *3 ¶ 15 (Ariz. App. Feb. 8, 2021) (mem. decision).

**¶4** We granted review because this case presents a legal issue of statewide importance. We have jurisdiction under article 6, section 5(3) of the Arizona Constitution.

## II. DISCUSSION

**¶5** We review issues of law, including statutory interpretation and whether a judgment is void, de novo. *State v. Holle*, 240 Ariz. 300, 302 ¶ 8 (2016); *BYS Inc. v. Smoudi*, 228 Ariz. 573, 578 ¶ 18 (App. 2012). When we interpret statutes, we strive "to effectuate the legislature's intent." *Welch v. Cochise Cnty. Bd. of Supervisors*, 251 Ariz. 519, 523 ¶ 11 (2021) (quoting *Stambaugh v. Killian*, 242 Ariz. 508, 509 ¶ 7 (2017)). "Statutory terms . . . must be considered in context." *Est. of Braden ex rel. Gabaldon v. State*, 228 Ariz. 323, 325 ¶ 8 (2011). "'When the plain text of a statute is clear and unambiguous,' it controls unless an absurdity or constitutional violation results." *Sell v. Gama*, 231 Ariz. 323, 327 ¶ 16 (2013) (quoting *State v. Christian*, 205 Ariz. 64, 66 ¶ 6 (2003)). "A cardinal principle of statutory interpretation is to give meaning, if possible, to every word and provision so that no word or provision is rendered superfluous." *Nicaise v. Sundaram*, 245 Ariz. 566, 568 ¶ 11 (2019).

**A.**

**¶6**         When a property owner becomes delinquent on property taxes, the state acquires a lien upon the property which it can then sell to a private party who becomes a lienholder.  A.R.S. §§ 42-1151, -18114; *see generally* Title 42 Chapter 18 Article 3 (detailing process for sale of tax lien for delinquent taxes).  The lienholder may foreclose on the tax lien if certain statutory requirements are met.  A.R.S. § 42-18201.  One such statutory requirement is pre-litigation notice to the property owner.  § 42-18202.  Failure to comply with the pre-litigation notice requirements set forth in § 42-18202(A) renders a subsequent default judgment void.  *See Advanced Prop. Tax Liens, Inc. v. Sherman*, 227 Ariz. 528, 532 ¶ 21 (App. 2011); *see also* § 42-18202(C) ("A court shall not enter any action to foreclose the right to redeem under this article until the purchaser sends the notice required by this section.").

**¶7**         Section 42-18202[1] provides:

> A. At least thirty days before filing an action to foreclose the right to redeem under this article, but not more than one hundred eighty days before such an action is commenced or may be commenced under § 42-18101 the purchaser shall send notice of intent to file the foreclosure action by certified mail to:
>
> 1. The property owner of record according to the records of the county recorder in the county in which the property is located or to all of the following:

---

[1] The legislature has since amended (A)(1)(a) as follows: "(a) The property owner, *as determined by section 42–13051, at the property owner's mailing address* according to the records of the county assessor in the county in which the property is located ~~as determined by section 42 13051~~." 2022 Ariz. Sess. Laws ch. 17, § 1 (2nd Reg. Sess.).  Our interpretation of § 42-18202 is limited to the 2015 version of the statute.  We note, however, that the 2022 amendment appears to codify the interpretation we present in this opinion.

(a) The property owner according to the records of the county assessor in the county in which the property is located as determined by § 42-13051.

(b) The situs address of the property, if shown on the tax roll and if different from the owner's address under subdivision (a) of this paragraph.

(c) The tax bill mailing address according to the records of the county treasurer in the county in which the property is located, if that address is different from the addresses under subdivisions (a) and (b) of this paragraph.

By its terms, § 42-18202 delineates two distinct methods of satisfying the pre-litigation notice requirement. The first method, as expressed in subsection (A)(1), involves sending the notice to the property owner of record according to the records of the county recorder. The second method, as expressed in subsections (A)(1)(a)–(c), involves sending the notice to the owner according to the records of the county assessor, as well as to two additional addresses.

¶8        Here, we determine what is required of lienholders in providing valid notice under the second method, (A)(1)(a)–(c). While the procedure for the first method is not before us, understanding the first method provides a framework for understanding the second.

¶9        In *Sherman*, the court of appeals concluded that the first method "requires more" than just mailing the notice to the address found in the county recorder's records, especially if the notice is returned as undeliverable. 227 Ariz. at 532 ¶ 18. *Sherman* concluded that such notice must be provided to the property owner and not simply sent to the address of record. *Id.* at 531–32 ¶¶ 15–16. That is, if a lienholder sends notice under the first method, the lienholder should be reasonably certain that the notice will be delivered to the owner. *See id.* at 532 ¶ 20. But as *Sherman* noted, "[c]ompliance with § 42-18202(A) does not guarantee actual notice." *Id.* ¶ 21 n.4. The court further noted that "if the lien holder is not confident that the available address for the owner of record is current, the lien holder may prefer to follow the more extensive notice procedure set forth in subparagraphs 42-18202(A)(1)(a)–(c)" (the second method) because that method can be "reasonably satisfied and objectively proven." *Id.* ¶¶ 19–20.

**¶10**     This case asks us to decide whether this "more extensive notice procedure," prescribed by the second method, also requires some additional effort to ensure a higher likelihood of the owner receiving notice. We conclude it does not.  Although the word "address" is absent in subsection (A)(1)(a) in the 2015 version of the statute relevant here, (A)(1)(b) and (c) require lienholders to send the notice to the specified addresses only if the addresses differ from the owner's *address* under subdivision (A)(1)(a). This demonstrates the legislative intent that (A)(1)(a) is referring to the *address* of "[t]he property owner according to the records of the county assessor," rather than the property *owner*.  Therefore, *Sherman*'s due diligence requirement does not apply.

**¶11**     The context and structure of the statute confirm our reading of subsections (A)(1)(a)–(c).  By creating two separate avenues for delivering notice, the legislature intended the second method to require something different from the first.  The first method, per *Sherman*, is less likely to result in actual notice to the owner.  *See* 227 Ariz. at 532 ¶ 16. Consequently, the first method requires additional effort to ensure the owner has a higher likelihood of actually receiving notice.  *Id.* ¶ 18.  The court of appeals here interpreted one of the three steps of the second method to mean the same thing as the first method, *4QTKIDZ, LLC*, 2021 WL 438848, at *3 ¶ 15, rendering the second method superfluous or requiring an onerous and purposeless service on the two additional addresses in (b) and (c).

**¶12**     Our reading is also supported by the statute's designation of different county agencies under the two approaches, which further suggests that the first method is less likely to result in notice to the owner. The two methods are based on information obtained from different agencies with varying degrees of likelihood of having reliable contact information for property owners.  The first method requires a lienholder to send the notice to the "property owner of record according to the records of the county recorder," whereas the first step of the second method requires a lienholder to send the notice to the "property owner according to the records of the county assessor."[2]  § 42-18202(A)(1), (A)(1)(a).

---

[2] The additional phrase "of record" in subsection (A)(1) provides yet another textual clue indicating these provisions should have differing meanings.

¶13 The recorder's office maintains public records and documents, such as land transactions, but is not responsible for ensuring the records reflect the current owner of a parcel of land. *See What We Do*, Pima Cnty. Recorder's Off., https://www.recorder.pima.gov/WhatWeDo (last visited July 21, 2022). The assessor's office "is responsible for locating, listing, and valuing all of the properties under its jurisdiction that are to be listed on the assessment rolls." *Assessment Process*, Pima Cnty. Assessor, https://www.asr.pima.gov/Assessment (last visited July 21, 2022). Although there is no statutory requirement for an owner to update an address, the Pima County Treasurer's Office instructs taxpayers to change their mailing address through the Pima County Assessor's Address Change Form because "the Pima County Assessor manages property owner mailing addresses." *FAQs: How Do I Change My Mailing Address?*, Pima Cnty. Treasurer's Off., https://www.to.pima.gov/home/#faq (last visited July 21, 2022). Likewise, it is in the property owner's best interest to keep this information current for purposes of receiving assessment notices pursuant to A.R.S. § 42-15101. Thus, the county assessor's records are more likely to list the current address of a property owner than the county recorder's records, which means the first method is less likely to generate the owner's current address. It makes sense that the legislature intended to require some additional effort to obtain service for the method that is less likely to result in actual notice.

¶14 The text, context, and structure of this statute indicate that under the second method, nothing more is required of a lienholder than to send the notice, by certified mail, to the addresses on record of (a) the county assessor, (b) the situs address of the property, and (c) the tax bill mailing address of the county treasurer.[3] No additional effort to locate the owner's current address is necessary under the second method.[4] Therefore, the Lienholders' pre-litigation notices to HNT were sufficient, and the default judgments are not void on that ground.

---

[3] Notices must be sent pursuant to (b) and (c) only if the addresses differ from that in (a).

[4] At least one court has relied on the incorrect reasoning of the court of appeals below. *See Advanced Prop. Tax Liens, Inc. v. Othon*, 252 Ariz. 206, 215 ¶ 26 (App. 2021). We disavow any cases that misinterpret the statute to mean that "both notice provisions pinpoint the identity of the property owner, not particular addresses to which notice must be sent." *E.g., id.*

**B.**

**¶15**        The plain meaning of the statute aside, HNT argues that due process mandates the court of appeals' interpretation of § 42-18202.  HNT relies on *Flowers*, which held "that when mailed notice of a tax sale is returned unclaimed, the State must take additional reasonable steps to attempt to provide notice to the property owner before selling his property, if it is practicable to do so."  547 U.S. at 225.  But pre-litigation notice is merely a preliminary notice to alert tax delinquent landowners of a tax lienholder's intent to foreclose.   Even absent § 42-18202's mandate, lienholders must obtain sufficient service of process under Rule 4.1 to bring property owners to court.  Ariz. R. Civ. P. 4.1; *see Roberts v. Robert*, 215 Ariz. 176, 180 ¶¶ 16, 18 (App. 2007).[5]  That is, § 42-18202 adds an additional tier of due process not required by *Flowers*.  Moreover, when a private party purchases a tax lien, the pre-litigation notice stage of foreclosure does not involve state action.  *See State v. Sharp*, 193 Ariz. 414, 421 ¶ 19 (1999) ("[P]rotections contemplated by the Fourteenth Amendment, and by incorporation of the Fifth Amendment, apply only to state actors, not to private parties.").  Consequently, *Flowers* is inapplicable here.

**III.    CONCLUSION**

**¶16**        The Lienholders' efforts to provide notice to HNT complied with the second method of notice under § 42-18202.  They were not required to take any other action to provide notice of their intent to foreclose. Accordingly, we vacate the court of appeals' decision and remand for that court to determine whether HNT received proper service of process of the foreclosure complaint under Rule 4.1.

---

[5] Though HNT challenges the sufficiency of service of process, and at least one of the trial courts set aside the judgment on this ground, this issue is not before this Court.